

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 JUL 19 PM 3: 35

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

LEROY L. BANNISTER                                      CIVIL ACTION

VERSUS                                                  NO. 00-350

RAY HENNING                                             SECTION "B" (2)


## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Leroy L. Bannister, is a convicted inmate incarcerated in the Dixon Correctional Institute in Jackson, Louisiana. He instituted the captioned suit pro se and in forma pauperis pursuant to 42 U.S.C. § 1983, alleging that defendant, Ray Henning, a court reporter in Division "S" of the 24th Judicial District Court for the State of Louisiana, Parish of Jefferson, failed to provide him with a transcript of his guilty plea as required by state law, despite having been ordered by the state courts to do so. Record Doc. No. 1, Complaint at ¶ IV. Bannister seeks monetary damages in the amount of $400,000. Record Doc. No. 1, Complaint at ¶ V.

In response to plaintiff's complaint, Henning filed an answer that incorporated a motion to dismiss plaintiff's complaint. Record Doc. No. 13. Because defendant's motion

DATE OF MAILING ___ JUL 2 0 2000 ___

DATE OF ENTRY
JUL 2 0 2000



to dismiss is supported by an affidavit and attached exhibits, materials outside of the pleadings, it was converted to a motion for summary judgment, as required by Fed. R. Civ. P. 12(b). Record Doc. No. 15. Plaintiff filed a response to defendant's motion on June 21, 2000. Record Doc. No. 17.

In support of his motion to dismiss, Henning argues that "plaintiff failed to exhaust his state court remedies" in that he "failed to inform the trial court that he had not received his transcript. . . . Proper state district court procedures require that [plaintiff] file a motion . . . alert[ing] the court that the transcript has not been received whereupon appropriate measures are commenced to insure that [plaintiff] receives his transcript." Henning further argues that Bannister may file a timely application for post conviction relief by February 25, 2001 (three years from the date that he pled guilty to the multiple bill), and that "a copy of [plaintiff's] transcripts have been mailed. . . . Thus [plaintiff] has not suffered any harm or damage due to any delay in receiving his transcript." Record Doc. No. 13, at 1, ¶¶ I, II and III.

Henning also states that "42 U.S.C. [§]1983 does not apply to the defendant in his official capacity" [and] "defendant is a judicial officer against whom only non-monetary injunctive relief is allowed." Id. at 1-2, ¶¶ IV & V. In further support of his motion, defendant attached the affidavit of Anne F. Benoit, an attorney employed by the 24th Judicial District Court who "supervises and oversees the mailing of transcripts to

2

prisoners," attesting that she mailed Bannister's <u>Boykin</u>[1] transcript to him at the Dixon Correctional Institute on May 25, 2000. The affidavit further certifies that "Leroy Bannister's prescription date for his application for post conviction relief . . . is February 25, 2001." Finally, Henning asserts a counterclaim against Bannister, alleging that he is entitled to recover attorney's fees and court costs from plaintiff because plaintiff's complaint is frivolous. Record Doc. No. 13, at 2, ¶ VIII.

Bannister states in his response to defendant's motion for summary judgment that he pled guilty on February 18, 1998 and subsequently filed a motion for production of the transcript from the district court, which was granted on July 9, 1998.[2] He also states in his complaint that he filed a mandamus motion, which was granted on August 2, 1999 to ensure that the trial court complied with its July 9, 1998 order.[3] Record Doc. No. 1, ¶ IV. Plaintiff argues that Henning's failure to produce the transcript violated his rights to collaterally attack his conviction and sentence in a timely manner. Record Doc. No. 17,

---

[1]The Supreme Court's decision in <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), set the contemporary standards for plea bargain admonishments. <u>United States v. Barlow</u>, 17 F.3d 85, 89 (5th Cir. 1994). "[Boykin] holds that a defendant must plead guilty voluntarily and with knowledge that in doing so he waives his privilege against self-incrimination, his right to jury trial, and his right to confront his accusers." <u>Oliver v. United States</u>, 961 F.2d 1339, 1343 n.3 (7th Cir. 1992) (citing <u>Boykin</u>, 395 U.S. at 242-43.)

[2]Defendant Henning attached a true copy of the July 9, 1998 order to his answer and motion to dismiss. Record Doc. No. 13.

[3]The August 2, 1999 order is not in this Court's record. Although plaintiff states that the mandamus motion was granted by the <u>trial</u> court, he also quotes the order as follows: "'This application is transferred to Division "S" of the 24th Judicial District Court for that court to ensure compliance with its July 9, 1998 transcript production order.'" <u>Id.</u> This language indicates that it may have been an appellate court's order.

at 1, 2. He further states that La. Code Crim. P. art. 930.8 precludes consideration of an application for post conviction relief, including an application seeking an out of time appeal, if the application is "filed more than three years after the judgment of conviction and sentence has become final." In summary, plaintiff contends that he "has been **totally** denied timely access to the courts." Id. at 4 (emphasis in original).

Having considered the complaint, the record, the written submissions of the parties, the attachments thereto and the applicable law, and for the following reasons, it is **RECOMMENDED** that defendant's motion for summary judgment be **GRANTED** insofar as it seeks dismissal of the complaint and that defendant's "cross-complaint" for attorney's fees and costs be **DISMISSED.**

## ANALYSIS

A.    Summary Judgment Standards

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required

4

to negate elements of the nonmoving party's case.  <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 431 (5th Cir. 1998) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

> When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

<u>Thomas v. Barton Lodge II, Ltd.</u>, 174 F.3d 636, 644 (5th Cir. 1999) (citing <u>Celotex Corp.</u>, 477 U.S. at 322-23; quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  <u>Anderson</u>, 477 U.S. at 248.  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  <u>National Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim.  <u>Id.</u> (citing <u>Celotex Corp.</u>, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  <u>Celotex Corp.</u>, 477 U.S. at 323.

The Court must consider all evidence in the light most favorable to the nonmoving party. National Ass'n of Gov't Employees, 40 F.3d at 712-13. "Conclusory allegations unsupported by specific facts, however, will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Id. at 713 (quoting Anderson, 477 U.S. at 249).

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards, 148 F.3d at 432; accord Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id. (emphasis in original). "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Id. (quotation omitted) (emphasis in original).

B.     Plaintiff's Claim of Denial of Access to the Courts

Bannister argues that Henning's failure to provide him with the transcript as ordered violated plaintiff's First Amendment right of access to the courts.[4]

---

[4]Bannister also argues that Henning violated state law by failing to provide him with the requested transcript. Mere breach of a duty imposed by state law does not create liability under Section 1983, which

6

Prisoners have a constitutional right of meaningful access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977). However, this constitutional right is not without limitations. Significantly, before a prisoner may prevail on a claim that his First Amendment right of access to the courts was violated, he must demonstrate that his position as a litigant was actually prejudiced. In <u>Lewis v. Casey</u>, 518 U.S. 343, 348 (1996), the United States Supreme Court noted "the requirement that an inmate alleging a violation of [the right of access to the courts recognized in] <u>Bounds</u> <u>must show actual injury</u>." (Emphasis added). Under the actual injury requirement, the inmate must prove that he was "hindered [in] his efforts to pursue a legal claim," <u>id.</u> at 351, but "the injury requirement is not satisfied by just any type of frustrated legal claim." <u>Id.</u> at 354.

> <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools [that the constitutional right] requires to be provided are those that the inmates need in order to attack their sentences directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of <u>any other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

<u>Id.</u> at 355.

---

applies only to constitutional claims. <u>Doe v. Rains County Indep. Sch. Dist.</u>, 66 F.3d 1402, 1408 (5th Cir. 1995); <u>Forest v. Morfick</u>, 962 F.2d 12, 1992 WL 96226, at *2 (8th Cir. 1992) (unpubl. opin.); <u>Kearney v. Wilson</u>, 875 F.2d 315, 1989 WL 50430, at *1 (4th Cir. 1989). Thus, this Court does not consider plaintiff's claim that defendant violated state law by failing to provide him with a transcript. <u>Id.</u>

The <u>Lewis</u> court further explained that the First Amendment right of prisoners to access to the courts is limited to the right to "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." <u>Id.</u> at 356; <u>accord</u> <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997).

In this case, Bannister wholly fails to establish the actual injury element of his First Amendment claim. He alleges that he is prejudiced by defendant's failure to provide him with a transcript of his guilty plea because he needs it to attack his conviction and sentence collaterally. He contends in his original complaint that he only had two years from February 18, 1998 to file for post-conviction relief, pursuant to La. Code Crim. P. art. 930.8, and that he was prevented from filing a timely post-conviction relief application when he had not received the transcript by February 18, 2000. However, Bannister concedes in his response to defendant's motion for summary judgment that he actually has three years from the date his conviction became final within which to file his collateral attack. Record Doc. No. 17, at 4.

The legislature recently amended La. Code Crim. P. art. 930.8 to shorten the time limit for filing post-conviction relief applications from three years to two years after the date the judgment of conviction and sentence becomes final. 1999 La. Acts 1262, § 1 (codified at La. Code Crim. P. art. 930.8). However, the amended statute provides an exception for applications that "would already be barred by the provisions of this Article,

8

but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final." La. Code Crim. P. art. 930.8(A)(3). Thus, Bannister has three years from the date his conviction and sentence became final to file for post-conviction relief in the state court.

Under these circumstances, plaintiff's allegations fail completely to establish prejudice of the sort required by Lewis. He still has until at least February 18, 2001[5] to file for post-conviction relief in the state court. He has now received the transcripts that he sought, which were sent to him by certified mail on May 25, 2000. Thus, Bannister has suffered no actual injury from the delay. He clearly has not been denied access to the courts. Matthews v. Belton, No. 3-97-CV-1473-BD, 1999 WL 58854, at *2 (N.D. Tex. Feb. 1, 1999).

Lewis makes clear that Bannister's First Amendment rights are limited to having a reasonably adequate opportunity to file nonfrivolous claims. Plaintiff still has that opportunity. Accordingly, Henning's motion for summary judgment on plaintiff's claim of denial of access to the courts should be granted.

---

[5]The affidavit attached to defendant's motion for summary judgment indicates that plaintiff pled guilty to the predicate offense on February 18, 1998 and pled guilty to a multiple bill on February 25, 1998, which is the conviction for which he was sentenced. Assuming that plaintiff did not appeal, his conviction and sentence on the multiple bill became final when the delay for appealing ran.

9

C.    Plaintiff's Claim of Denial of Due Process

Bannister also argues that the delay in receiving his transcripts has denied him due process. The existence of a recognized liberty or property interest protected by the Constitution is a threshold requirement to a due process claim, regardless whether substantive or procedural due process rights are involved. Martin v. Memorial Hosp., 130 F.3d 1143, 1146, 1150 (5th Cir. 1997); Stiesberg v. State, 80 F.3d 353, 356 (9th Cir. 1996). Constitutionally protected liberty interests may be created in either of two ways: by the Due Process Clause itself or by state law. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1986) (emphasis added).

> In order for a person to have a property interest within the ambit of the Fourteenth Amendment, he "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." . . . Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings . . . [I]t is clear that "the sufficiency of the claim of entitlement must be decided by reference to state law."

Blackburn v. City of Marshall, 42 F.3d 925, 936-37 (5th Cir. 1995) (citations omitted; emphasis added).

The Constitution does not require that copies of transcripts of court proceedings be provided to inmates. In short, the Constitution itself creates no protected interest in transcripts that might give rise to a substantive due process claim.

10

Thus, Bannister must rely on state law to create the constitutionally protected interest he seeks to vindicate in this case.  He is correct in arguing that decisions of Louisiana courts hold that indigent inmates must be provided with one copy of the transcript of their guilty plea colloquies as of right, free of charge upon request, without making any showing.  State ex rel. Simmons v. State, 647 So. 2d 1094, 1095 (La. 1994); State ex rel. Johnson v. Clerk of Court, 479 So. 2d 916 (La. 1985); State ex rel. Murray v. Ward, 363 So. 2d 913 (La. 1978).

Although not all state law creates a liberty or property interest protected by the Constitution and cognizable under Section 1983, the Court will assume without deciding that Bannister has such an interest in acquiring free copies of his guilty plea colloquies. Several courts, including the Fifth Circuit, have held that "'[a]n excessive delay in furnishing a pretrial or trial transcript to be used on appeal or for post-conviction relief can amount to a deprivation of due process.'"  Forest, 1992 WL 96226, at *1 (quoting DeLancy v. Caldwell, 741 F.2d 1246, 1247 (10th Cir. 1984)); accord Mims v. LeBlanc, 176 F.3d 280, 282 (5th Cir. 1999); Rheuark v. Shaw, 628 F.2d 297, 302 (5th Cir. 1980). Such a claim is actionable under Section 1983.  Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); Matthews, 1999 WL 58854, at *1.

The Fifth Circuit and other appellate courts have adopted a four-factor test to determine whether a state court's delays in providing transcripts or processing appeals violate due process.

> To determine whether a state's delay in processing a prisoner's appeal violates due process, we have adopted the four factors applied by the Supreme Court in pre-trial delay cases. Those factors include 1) length of delay; 2) the reason for the delay; 3) the [convicted] defendant's assertion of his right; and, 4) the prejudice to the defendant. <u>The most important factor, prejudice to the defendant</u>, focuses on three types of potential prejudice that may result from appellate delay:  1) extended oppressive incarceration pending appeal; 2) the anxiety and concern of the convicted party awaiting the outcome of the appeal; and, 3) impairment of the convicted party's grounds for appeal or the viability of his defenses in the event of retrial.

<u>Mims</u>, 176 F.3d at 282 (citing <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972)) (additional citations omitted) (emphasis added); <u>accord</u> <u>United States v. Hawkins</u>, 78 F.3d 348, 350-51 (8th Cir. 1996).

Examining those factors in the instant case, "[i]t is not at all clear that [Bannister] met the threshold requirement of demonstrating an undue length of time while awaiting a chance to [file a post-conviction relief application]." <u>Mims</u>, 176 F.3d at 282.  "Not every inordinate delay . . . amounts to a denial of due process." <u>Hawkins</u>, 78 F.3d at 351 (citing <u>Rheuark</u>, 628 F.2d at 303); <u>see</u> <u>United States v. Bermea</u>, 30 F.3d 1539, 1568 (5th Cir. 1994) (less than 18 months delay "unfortunate" but "not so excessive as to militate strongly in [convicted defendant's] favor"); <u>United States v. Tucker</u>, 8 F.3d 673, 674 (9th Cir. 1993) (en banc) (delay of more than three years in completing trial transcript did not

12

violate due process); cf. Simmons v. Beyer, 44 F.3d 1160, 1169 (3d Cir. 1995) (13-year

delay in processing appeal "is an outrage" warranting habeas corpus relief). As discussed

above, despite Henning's 22-month delay in providing Bannister with the transcripts since

the state court's order to do so, Bannister still has about seven months left under state law

in which to file his post-conviction relief application. "'Until there is some delay which

is presumptively prejudicial, there is no necessity for inquiry into the other factors that go

into the balance.'" Mims, 176 F.3d at 282 (quoting Barker, 407 U.S. at 530).

However, even if Henning's delay was undue and even if the second and third

factors weigh in plaintiff's favor (Henning has offered no explanation for the delay and

Bannister has pursued his right to the transcripts), Bannister must also satisfy the "most

important factor," the prejudice prong. Mims, 176 F.3d at 282; Hawkins, 78 F.3d at 351.

In Mims, a habeas corpus proceeding, Mims alleged that his appellate counsel, who

had not represented him at trial, was unable to prepare fully for his direct appeal without

the trial transcript, production of which had been delayed for about eighteen months.

Mims, 176 F.3d at 281-82. The Fifth Circuit held that "[t]his is not the sort of prejudice

that rises to a due process deprivation." Id. at 283.

> The Louisiana appellate court has repeatedly ordered the whole transcript
> and has reduced any potential prejudice pending receipt of a complete record
> by delaying the briefing schedule. Mims's counsel will thus have ample time
> to review the record and file an effective appeal. The potential prejudice
> alluded to by Mims has been minimized or eliminated. We hold that

> although the ongoing delay has been unfortunate, the prejudice alleged by
> Mims is insufficient to qualify as a due process violation.

Id.

Similarly, in the instant case, despite the unfortunate and unexplained delay in producing Bannister's transcripts, he now has the transcripts and still has ample time to review the record and file an effective post-conviction relief application. The potential prejudice has been minimized or eliminated and there is no impairment of plaintiff's grounds for relief. Moreover, he has shown neither extended oppressive incarceration pending filing for post-conviction relief or excessive anxiety and concern awaiting the outcome of the application for post-conviction relief, which has not been filed yet.

Moreover, it is not essential that Bannister have the transcripts of his guilty plea colloquies before filing a post-conviction relief application. "[O]nce a guilty plea is entered the defendant bears the burden of showing that the plea was not made knowingly, voluntarily and intelligently. We are not bound to look solely at the transcript of the plea hearing in making this constitutional determination, but look to all the surrounding facts and circumstances." Oliver v. United States, 961 F.2d 1339, 1343 n.3 (5th Cir. 1992) (citing Henderson v. Morgan, 426 U.S. 637, 644-47 (1976)). Thus, the Fifth Circuit in Oliver, Haase and United States v. Woods, 870 F.2d 285, 287 (5th Cir. 1989), reviewed the merits of the petitioners' habeas corpus applications despite the absence of transcripts of their guilty plea colloquies.

Accordingly, defendant Henning is entitled to judgment as a matter of law on plaintiff's due process claim.

D.    Henning's Counterclaim Should Be Dismissed

Henning's counterclaim alleges that he is entitled to recover attorney's fees and court costs from plaintiff because plaintiff's suit is frivolous. Although defendant is the prevailing party in this Section 1983 suit, his counterclaim should be dismissed.

Under 42 U.S.C. § 1988, the Court may award attorney's fees to the prevailing party in certain types of litigation. The standard for the award of such fees differs depending on whether the prevailing party is the plaintiff or the defendant. Attorney's fees should be awarded to a prevailing plaintiff in all but special circumstances. White v. South Park Indep. Sch. Dist., 693 F.2d 1163, 1169 (5th Cir. 1982). However, a prevailing defendant may recover attorney's fees under Section 1988 only upon a showing that the plaintiff filed a frivolous, groundless, unreasonable or bad faith suit. Hughes v. Rowe, 449 U.S. 5, 14 (1980) (citing Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421-22 (1978)); accord Coats v. Pierre, 890 F.2d 728, 733 (5th Cir. 1989); White, 693 F.2d at 1169-1170; see also Lopez v. Arkansas County Indep. Sch. Dist., 570 F.2d 541, 545 (5th Cir. 1978) (concluding, before Hughes, that the Christiansburg standard applies under section 1988).

15

To avoid discouraging all but "airtight" civil rights claims, the courts focus on whether a plaintiff's claim is colorable and of arguable merit. <u>Jones v. Texas Tech. Univ.</u>, 656 F.2d 1137, 1145 (5th Cir. 1981). Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. <u>White</u>, 693 F.2d at 1170. When a plaintiff presents some credible evidence to prove his claim, he has shown that his case has colorable merit; consequently, the prevailing defendant is not entitled to attorney's fees. <u>Vaughner v. F.J. Pulito</u>, 804 F.2d 873, 878 (5th Cir. 1986); <u>Lopez</u>, 570 F.2d at 544-45.

Frivolity of a case depends on whether it "was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." <u>United States v. State of Miss.</u>, 921 F.2d 604, 609 (5th Cir. 1991). The factors important to frivolity determinations are (1) whether plaintiff established a prima facie case, (2) whether defendant offered to settle and (3) whether the court dismissed the case or held a full-blown trial. <u>Id.</u>

In the instant case, Bannister's claims were not frivolous from the outset. When he filed this lawsuit, he had a right under state law to receive his <u>Boykin</u> transcripts, he had been granted a court order affirming that right and he still had not received his transcripts 22 months after that order was issued. His arguments that his right of access to the courts and his due process rights had been impaired were not so lacking in merit that they were

16

groundless. Although he incorrectly believed that he only had two years, rather than three, to file his post-conviction relief application, he is not a lawyer and his confusion about the recently amended statute was understandable. Henning offered no explanation for the delay and did not provide plaintiff's transcripts until three months after this lawsuit was filed and shortly after it was served upon him pursuant to my order. Record Doc. Nos. 11, 14. In addition, Henning appeared pro se, without an attorney who might have charged fees.

In these circumstances, Henning's counterclaim, denominated as a "cross-complaint" in his pleading, should be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that defendant Ray Henning's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE. IT IS FURTHER RECOMMENDED** that Henning's counterclaim be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.   Douglass v. United Servs. Auto. Ass'n,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____/9th_____ day of July, 2000.

                    JOSEPH C. WILKINSON, JR.
                    UNITED STATES MAGISTRATE JUDGE